## THE PEOPLE, *ex rel.* Johnson and Butler, *vs.* BENTON and others.

What classes of canal contracts are within the provisions of the act of May 12, 1847, in relation to the public works, authorizing the insertion of a clause in all contracts made in pursuance of that act, for the speedy and equitable adjustment of all questions relative to the performance, or otherwise, of such contracts.

A canal contract contained a provision that for the speedy and just settlement of such contract the resident engineer should determine the amount or quantity of the several kinds of work to be paid for, under the contract, and the amount of compensation, and should present an account of the same to the canal commissioners; and that in case either of the parties should consider such final account incorrect, or that it was unjust to either of the parties, arbitrators might be selected, who should investigate the matters complained of, and determine all questions that might arise relating to compensation for work done under such contract. A submission to arbitrators was made, in pursuance of this provision in the contract. *Held*, that by the terms of the contract the matter to be submitted to the arbitrators was the "final account" made out by the engineer; and that the arbitrators, though they might correct the errors of the en-

gineer, could not extend their investigations beyond such "account," and take cognizance of independent claims.

*Held also,* that the true interpretation of such submission, and of the power contained in the contract under which the same was made, was that the arbitrators were to determine how much work had been performed; how much of each kind of work; what the compensation should be, for each part and parcel of the said work; and whether the "final account" presented by the engineer was correct, and just to the parties respectively.

DEMURRER, by the relators, to the return of the defendants to a writ of mandamus. The facts are stated in the opinion of the court.

*A. Loomis,* for the relators.

*L. Ford,* for the defendants.

GRIDLEY, J. This case comes before the court upon a demurrer to the return to a writ of mandamus issued at the suit of the relators against the defendants, commanding them to proceed, and award upon certain claims presented and proved by the relators, or show cause why they did not. It appears from the writ and return that the relators, on the 26th day of July, 1847, entered into three contracts with the canal commissioners, for the construction of two aqueducts and one lock on the Erie Canal enlargement. Those contracts respectively contained a provision for submitting certain questions to arbitrators, to determine, and the submission under consideration was made in pursuance of this provision, which is in the following words : " And to provide for the speedy and just settlement of this contract it is hereby further mutually agreed that the resident engineer for the time being in the employ of the canal commissioners, on the work herein contracted for, shall in all cases determine the *amount* or *quantity* of *the several kinds of work which are to be paid for under this contract,* and the *amount of compensation to be paid therefor ;* and shall within twenty days after the work shall, in all respects, have been completed, according to the terms and conditions of this contract, present an *account of the same* to the canal commissioners; and in case either of

The People *v.* Benton.

the parties to this contract shall be of the opinion that the *final account when made and presented as above,* shall in any respect be *incorrect,* or *that it is unjust to either of the parties* concerned, having reference to the terms and conditions of this contract, the canal commissioners may, in their discretion, select the division engineer or any other disinterested person, and the aforesaid contractor shall select any discreet freeholder residing in the county where the work embraced in this contract is located, and who shall have no interest direct or indirect in the matter to be submitted to him for decision, and the two thus chosen shall select another of like qualifications as the person last mentioned, and the persons so selected shall investigate the matters complained of, and determine all questions that may arise relating to *compensation for work done under this contract;* and when so made shall be binding as well on the part of the canal commissioners as the aforesaid contractors, and shall be in all respects final and conclusive."

The arbitrators awarded in part, but refused to make any award upon a large class of claims presented by the contractors, upon the ground that they doubted whether they had jurisdiction over those claims, under the submission. The rejected claims are set forth in Schedule B. annexed to the return, and have been presented by the counsel for the relators as embraced in three classes. 1st. Increased labor and expense of performing work in a manner different from that contemplated in the contract, in consequence of changes in the plan; and extra work ordered or caused by the state officers. 2d. Prospective profits on work embraced in the contract, but withheld and dispensed with. 3d. Increased expense of work by reason of delays in presenting plans, &c. and other hindrances.

There is no difficulty in understanding the nature of the claims set up, except a few of those enumerated by the counsel of the relators under the first of the aforesaid divisions. As characterized by the counsel in his points, it *would seem* that the arbitrators refused to decide upon a claim for *extra work* done, by order of the state officers. I did not understand the counsel to insist, in his argument, that such claims were reject-

The People *v.* Benton.

ed, and I think the language of the return forbids such a con-
struction. The claims were rejected because they did not relate
to "*compensation for work done,*" &c. nor "*to the amount of
compensation,*" &c. nor "*for compensation for materials
found,*" nor for "*extra work done,*" &c. The testimony was
before the arbitrators, and they were able to understand more
perfectly than I can, the meaning of the obscure language in
which several of the claims enumerated in schedule B. are ex-
pressed.

Two questions are made upon this argument.

I. Whether the contracts under which the claims of the rela-
tors arose are within the provisions of the act authorizing the
insertion of a clause for "the speedy and equitable adjustment
of all questions relative to the performance, or alteration of any
of the contracts" contemplated by the act. (*Laws of* 1847, *p.*
314, 317.) By the 11th section of this act, it is provided that
"all contracts made IN PURSUANCE OF THIS ACT," shall con-
tain the above mentioned provision. The question then is,
whether the relators' contracts were made in pursuance of the
act in question. This leads us to examine the provisions of the
act, in order to determine what classes of contracts were author-
ized by it; for the provisions can not be construed, as was
argued by the counsel for the relators, to extend to *all* canal
contracts thereafter made. If that had been the intention of
the framers of the act, it would have been easy to express that
intent. But they have not done so. On the contrary, they have
restricted the application of the provision to *such contracts only*
as are made *in pursuance of the act* under consideration. What
then is the class of contracts contemplated and authorized by
this act? The object of the act was to provide more stringent
rules to ensure the fidelity of certain officers and agents of the
state engaged upon our canals; and to change the entire sys-
tem which had existed up to that time, under which canal re-
pairs had been made. Formerly these repairs had been made
by the state, under the direction of the superintendents. By
this act this work was to be done by contract, upon proposals
made on due public notice given by the superintendents in the

newspapers designated to publish the laws in each county through which his section of the canal passed, of the day and hour when sealed propositions would be received. This, therefore, is the class of contracts embraced in and provided for by the act in question. It is true that the last clause of the 5th section directs the canal commissioners to contract for the rebuilding of locks, bridges, and other structures on the finished canals, on sealed propositions, except during the season of navigation. And by the 13th section it is enacted that the regulations of the canal board, made in pursuance of the directions contained in the preceding sections of the act, shall apply to all proceedings of the commissioners and engineers in giving notice and receiving propositions in relation to any of the public works. With these exceptions, all the provisions of the act in question respecting canal contracts relate exclusively to the contracts for canal repairs; and by the 13th section all work done under contracts connected with the Erie Canal enlargement, is to be kept distinct as far as practicable, from the ordinary repairs of the canal by the superintendents. From an attentive examination and consideration of the several sections of the act, I have thus been led to the conclusion that the contracts under consideration, being for work to be done upon the Erie Canal enlargement, were *not* contracts made *in pursuance of the act in question.* They were made in pursuance of provisions contained in the revised statutes. The act referred to created a new class of canal contracts, before unknown in our canal system ; and that is the class contemplated by the act, and which alone can be said to be made in pursuance of it.

These views have been strengthened and confirmed by looking into the history of the legislation which resulted in the enactment of this statute. It had its origin in the extraordinary developement of a system of stupendous frauds that had been committed, in collusion with the agents of the state upon the line of the Genesee Valley canal. The legislative documents of the year 1847 contain three reports upon the subject matter of this act. Senate Document No. 63 is the report of the majority of the canal committee, and it is adverse to the proposed

change.	Document No. 79 is the report of Senator Beach, from the minority of the said committee, and is in favor of the alteration adopted in the act in question	Document No. 125 is the report of Mr. Jones on behalf of the canal commissioners, and made in the fall session of 1847, to whom the subject was referred on a petition for the repeal of the law after a brief experiment of its operation.	Now these reports all relate to the proposed change in the mode of making canal repairs, and are occupied with arguments upon the expediency or inexpediency of adopting the mode of advertising for proposals, and performing the work by contracts, as is directed in the act.	Not one word is said on the subject of changing the mode of settling and adjusting the claims of contractors by a resort to a board of arbitrators instead of an application to the canal board or to the legislature for relief.	Had it been the intention of the members of the committee who framed the act in question, or of the legislature which passed it, to effect a change so radical and so universal, in relation to the determination of claims under canal contracts, as to abolish the jurisdiction of the canal board, and to establish a new tribunal consisting of a board of arbitrators, it would at least have been discussed in the full and elaborate reports to which I have referred.	And it is also reasonable to conclude that the legislature would have provided directions in detail for the constitution of this new tribunal, and not left so important a power to be exercised under a provision so obscure 'and indefinite as that contained in the 11th section of the act in question. My judgment, therefore, is that the section in question was thrown into the act without much consideration, and was intended solely to provide some easy mode of facilitating the settlement of claims under the particular class of contracts contemplated by the act.

II. A second question relates to the *terms of the submission* under which the arbitrators acted ; and is independent of the proposition which affirms that the act of 1847 has no application to the contracts under consideration ; and of the point, whether the words of the 11th section are not so general as to authorize the insertion of a broader provision in the contract, and a broader

The People *v.* Benton.

submission under it. It is not a question whether, under the statute, (conceding its application to these contracts,) a provision might have been inserted embracing the rejected claims; but whether the submission does in fact embrace them. To determine this point we must examine the different clauses of the provisions contained in the contracts, and on which the submission is predicated, and to which it is limited. In the first place, we find the duty of the engineer confined to the determination of the *amount* and *quality* of the several kinds of work to be paid for under the contract, and the *amount of compensation to be paid therefor.* Clearly then the engineer had nothing to do with the subject matter of the rejected claims. His duty lay within the narrow limits prescribed by the contract. This account is *to* be presented by the engineer to the canal commissioners, and is called the "*final account.*" And in case either party is of the opinion that this "*final account*" is "*incorrect*" or "*unjust to either of the parties,*" "*having reference to the terms and conditions of the contract,*" the parties may select arbitrators in the manner prescribed in the contract. Now it seems to me quite clear, that the matter to be submitted to the arbitrators was the "*final account*" made out by the engineer, and that the arbitrators (though they might correct the errors of the engineer) could not extend their investigation beyond the "*account,*" and take cognizance of independent claims—such as those which the arbitrators rejected from their consideration. This conclusion will be still more clear, when we consider, in the next place, the precise subject matter upon which the arbitrators, by the very terms of the submission, were directed to award. That is stated in these words: "and *determine all questions that may arise relating to work done under this contract.*" In other words, they are to determine how much work has been performed; how much of each kind of work; what the compensation shall be for each part and parcel of the said work; and in fine, whether the "final account" presented by the engineer is correct and just to the parties respectively. Such, in my judgment, without extending the discussion further, is the true interpretation of the terms of the submission, and the pow-

ers contained in the contract under which it was made. The result is that the defendants are entitled to judgment on the demurrer.

Judgment for defendants.

